Alright, we're ready to proceed. Good morning, and we'll start with, I believe, is it Mr. Sessions? That's correct, Your Honor. My name is Peter Sessions. I represent the plaintiffs and the appellants in this case, and I'd like to aspirationally reserve two minutes for rebuttal. How many? Two? Two minutes, yes. Okay, thank you. And I think at the outset, what I'd like to emphasize is the standard of review in this case, because I think it's critically important to resolving the appeal. And there are two points I'd like to make about standard of review. And the first is, you know, obviously we're talking about a motion to dismiss for failure to state a claim. So, of course, that means that this court is reviewing that decision de novo. There's no deference to what the district court did. So that means the court has to reverse if it finds independently that Sovereign's claims are facially plausible. And if the court, you know, can draw a reasonable inference from the pleadings that the defendant is liable, then it has to reverse. And the second point I'd like to make about the standard of review is about, you know, the legal theory of recovery we're talking about, which is RICO. And the Supreme Court has informed us that RICO is, quote, to be liberally construed to affect its remedial purposes. This court has said the same thing in its en banc case in Odom. I recognize there has been some, you know, pushback at the district court level on RICO cases. Some district courts are frustrated with the statute because it's so broadly worded. But the Supreme Court and this court have both said, look, it's not our job to step in the shoes of Congress to rewrite this statute. It's broadly worded, so it has to be broadly interpreted. Let me ask you this, Mr. Sessions. The district court found that there was, on causation, that there was intervention with the search warrant and with the magistrate judge that broke the link of causation. Which, if that link is broken, that could defeat your claim. Is that correct? It could. So, and I have a number of points to make about, you know, the district court's argument there. And obviously it's important because, you know, this is a RICO case, obviously, so there are a lot of moving parts to it. But the district court really, this is really the only issue that was discussed by the district court. So, you know, it's important that we get this issue right. And the first response I'd like to make about proximate causation, which is a requirement in this case, is that this is, of course, a factual issue. This is a, whether something is related to something else, whether an event at time A has any effect on time B, these are quintessential issues of fact. Let's say hypothetically, let's say I agree with you and say for 12B purposes that causation, that there's enough there. It's still possible at summary judgment, after there's more information about the magistrate judge and the search warrant, that that still could break up causation, right? It could, if there's enough evidence. And that's the argument that we're making today, which is that kind of determination necessarily involves a balancing of facts, which is not something that we're supposed to be doing on a motion to dismiss. You know, and so... I guess, counsel, given the stage you were at in the case, had you been able to develop discovery regarding causation in this context? No, I mean, we're at the pleading stage. We filed a complaint and the district court dismissed it with prejudice. So we haven't even gotten to a point where we could do discovery. And so, you know, another important point I'd like to make about this proximate causation argument is, as I said earlier, the district court really focused like a laser on this issue. And in doing so, ignored the rest of our pleadings. We've alleged in the complaint numerous actions by the defendants that we think give rise to RICO liability. Well, let me move slightly away from that, because I'd like you to point to where in the third amended complaint does it sufficiently allege the predicate acts by, I think it's Mr. Neodorff and MHN, that satisfied the heightened Rule 9 pleading standards. Where in the third amended complaint do you have that? Sure. And I mean, the first thing I'd like to say about the predicate act issue is that this is an issue that wasn't raised by the district court in its order. So I'm not sure whether it's appropriate to be discussing it here. The next thing I'd like to say is, my understanding is that Mr. Neodorff is, I believe he passed away in April. So I'm not sure that it's worth spending a lot of time discussing predicate acts. But as far as, I'm sorry, go ahead. Yeah, technically though, the judge in dismissing the third amended complaint did cite back to some of the reasons he dismissed the second amended complaint. And I think in that dismissal of the second amended complaint, he did discuss some of this, the deficiency with regards to the 9b pleading standards. Right. There is a short comment by the district court where the court said, referred back to that previous order. And so it kind of puts us in a difficult position now on appeal because it's not clear exactly, because there are two different complaints with different allegations. It's not clear how applicable the second order, sorry, the first order on the second amended complaint is with regard to the third amended complaint. So, but setting that aside for now, your Honor's question was about the, essentially, the predicate acts and the pattern of racketeering with regard to the defendants. And it's important to note that these defendants are all inextricably intertwined. We have Health Net, which is really the prime mover in this case. This is the insurance company that issued all these policies. We have Managed Health Network, which is a subsidiary of Health Net. In fact, it's the behavioral health arm of Health Net. And all the claims that we're talking about in this case are behavioral health claims, because sovereign facilities are all mental health addiction recovery centers. And then we have Centene, which is the company that came along and purchased Health Net. And as we've alleged in their complaint, Centene was involved when it acquired Health Net, was involved with what we've characterized as this sham audit that Health Net conducted, where it indefinitely appended claims with no intention of paying. So I think if the court looks at the complaint, it will see how all these different entities are intertwined and how they all act together in order to further this case. But I think there's a struggle between the defendant's refusal to pay, and you're essentially alleging that their refusal to pay is fraudulent rather than some exercise of business policy or legal position. Can you clarify that with me? And I think that's one point that the district court noted. Yeah, that's right. What the district court said was that this letter, this saganic letter that was sent out in January 2016, the district court said, well, this just reflects disagreements about the interpretation of the contracts and about the relevant laws. So this can't be a predicate act. And but I think this misinterprets our complaint. The fraud here is not the interpretation of policy provisions. The fraud was defendants representation that in this letter that it was still processing claims and that it was just asking for further information, further documentation. And, you know, given sufficient information, you know, these claims could be paid when, in fact, as we've alleged, they had no intention of paying these claims. The goal was to pen them indefinitely, to place them essentially in this claims limbo where nothing ever happened to them and pen them indefinitely. So these statements in the saganic letter are not actually genuine interpretations. These aren't arguments about whether under the policy claims should be paid or not. It was essentially a smokescreen for them to pen these claims. And if you look at the saganic letter, you can see examples of this. One of the things the letter says is, hey, some of the policies might have been fraudulently obtained and therefore we might not pay claims into those policies. But as we've alleged in the complaint, HealthNet never rescinded any policies. If it really believed that some of these policies have been fraudulently obtained, you would expect some of them to be rescinded. But they never rescinded any of them. Another thing the letter talks about is coinsurance. HealthNet says in this letter, look, we can't pay claims until you can show us proof that coinsurance has been applied correctly. But it's impossible to calculate coinsurance unless the claims have been adjusted first by HealthNet. That obviously wasn't happening because they were pending these claims. So I think if you look at the allegations in the complaint and you look at the letter, I think the court will see that we fairly stated that there was fraud here. Because HealthNet was claiming that they were handling these claims in one way when in fact they weren't handling it that way at all. And the final point I'd like to make on this is to point the court in the direction of the cases that we've cited in our brief. Because one sort of theme that arises from the district court's order and defendant's argument is this idea that this is a dispute between providers and insurance company over whether claims should be paid. And that's not a RICO case. This is essentially a breach of contract case. And this doesn't give rise to RICO liability. And I think if the court reads the cases in our brief, and this is page 56 of our opening brief, we cite these cases. We've cited three cases. They're not Ninth Circuit cases, obviously. They're district court cases. But those are all cases where the provider's RICO claim was based at least in part on misrepresentations made by insurance companies regarding whether claims should or shouldn't be paid. And in all those cases, the court found that those are predicate acts under RICO. So the fact that there might have been a contractual dispute between the parties didn't mean that there was no RICO liability. RICO liability could still attach, and we think the court should reach the same conclusion here. Mr. Neudorf, can I ask you a question? Yesterday, you filed an objection to the appellee's filing last week of a state court jury verdict. And at least with regard to, I think it was Health Net, with regard to this ongoing RICO case. And it sounds like now Mr. Neudorf is deceased. So it sounds like this continues to be a moving sort of target. What are we to do? I know you filed an objection. You don't want us to consider that filing of the state verdict. But what effect does that have on this case, if any? Well, I would argue none. First of all, just as a procedural matter, this letter that was filed by the defendants was filed under Rule 28J, which allows for supplemental authorities. I don't think under the rule about a jury verdict counts as a supplemental authority. Case law interpreting this rule has held that authority means case law and not what juries are up to. But setting that aside, substantively, that case is still ongoing. The trial is not over. It won't be over for several months. We have several disputes with what the state court judge did in that case. There's very likely, almost certainly going to be an appeal. And finally, I would argue that that case is simply not helpful to the issues that we're trying to decide today. That case involves different claims and defenses. If you look at the jury's verdict, there aren't any specific factual findings made in that verdict. It's basically just a list of claims and defenses, and the jury's either approval or not approval of those claims and defenses. And that verdict doesn't discuss in any way defendants' reporting of sovereign to law enforcement, which was ostensibly the justification for filing the letter. So, you know, long story short, this is a different case with different issues. And I would argue that especially at the motion to dismiss stage, that it's not proper to try to, as the district court, as we argue the district court did, to try to sort of import issues and decisions from that other case into this case in order to decide whether a complaint should be dismissed or not. Unless there's other questions, we've taken you into overtime, but I'll give you a minute for a rebuttal. Thank you. All right. I believe, then, Ms. Harris, are you going next? Yes, Your Honor. Go ahead. Thank you. Thank you, and may it please the Court. Sarah Harris for Health Net and the Centene Appellees. Sovereign's RICO claim fails for multiple independent reasons. First, Sovereign did not adequately allege that defendants proximately caused Sovereign's business to close. That is a quintessential legal question. The legal question is whether there is a sufficient nexus of sufficiently direct connection between the allegations in the complaint and the harms that are alleged. Second, Sovereign's alleged RICO predicates, the misrepresentations to law enforcement into Sovereign, are not actionable, and the district court emphatically did say that the third amended complaint did not satisfy that standard. That's at ER 10. Third, for most defendants, Sovereign does not allege two predicate acts specific to each defendant. It just lumps everyone together. And finally, Sovereign's claims are untimely. Sovereign filed its complaint more than four years after the asserted injury of responding to that January 2016 auto request. The district court has already given Sovereign many chances to amend, but this RICO claim simply should not exist. This court should affirm. Ms. Harris, is it your position that if a defendant knowingly presents false information to the FBI, and the FBI then acts on that information, that the defendant can just never be responsible for the injuries resulting from the FBI's actions? No, that is not our position. Our position is, if you look at both the Galen case from this circuit and the Supreme Court's Malley decision, what you would need to allege to claim that there is some sort of sufficient allegation of taint, at least with respect to the FBI, would be that you need to show that the FBI, the law enforcement officer, then maliciously omitted information in a warrant application, and then misled, say, the magistrate judge. But how can we know that here? Why isn't what they've alleged enough? And maybe that's an issue for summary judgment, because we're at the 12B stage. Sure. Several responses. First of all, all that they have alleged is they don't know what's in a warrant application. Because it's sealed, right? Because it's sealed. How can they know? Well, I think there's a couple of problems with that. One is that's the same as in Iqbal, where the allegations were the 9-11 detention policy was injuring the plaintiff, and the Supreme Court still said, look, you might not know various things because of executive privilege, but you still have to allege more than on information and belief. And second of all, I think it's very telling that in other litigation, Sovereign itself, and this is page 30 of our brief, is actually saying state agencies were involved in feeding the information, where, in fact, the warrant is relying on some information from the state agencies. How can they know that without discovery and if it's sealed? How can they know that? Well, I'm not sure why they alleged it, but I think the fact that they are making inconsistent allegations is a problem for them. And then third of all, even if you think that it is sufficient to allege that there is something in the warrant application, this case sort of has a Rube Goldberg-esque number of additional intervening causes on top of all that. There is no case in which there are two independent decision-makers, the law enforcement officers, and then on top of that, the magistrate judge, who are purportedly influenced without any sort of allegations as to the magistrate judge. And then on top of that, look at all the other third-party decisions about the raid. So let me just mention a couple of them. One is that during the raid, federal and state agents apparently, according to Sovereign's own complaint, were telling patients and employees to leave Sovereign, that it would close, that they should look for other things. There is no allegation that the defendants purportedly induced these unknown agents to make those representations, but Sovereign is certainly saying that's what caused the patients to flee. So are there any pending charges as a result of that raid? Pending? Criminal charges. Have any criminal charges come out of that search warrant? Not to date, but our understanding is that they are still under investigation at the U.S. Attorney's Office. That is our current understanding. Again, I think the problem for Sovereign is that we're looking at a motion to dismiss stage, and under Supreme Court cases like Hemi Group, you need a very, very direct link between the alleged conduct and the harm. The Supreme Court said more than one link in a chain is too many links. And so there is no case with such a combination of factors that purportedly lead to the business closing that would satisfy the proximate causation standard. And again, on top of that, even if you think that proximate causation is a closer call or wanted to give Sovereign the benefit of the doubt with respect to what it's pleading with respect to the warrant, there are still three independent reasons why their RICO claim fails. And so one of the other ones is the lack of any sufficient predicate acts as a matter of law. Now, Sovereign has focused a great deal on this gigantic letter from 2016, but there's a couple of problems with that that the district court correctly identified. And the first one is that there is not any connection between that letter and the business closure. That letter, again, has the intervening event of the raid. It doesn't have any connection to the raid itself. And so just starting off the bat, that particular predicate doesn't really get them where they seem to be trying to go on the business closure harm. But on top of that, the district court correctly held that this gigantic letter is all about legal representations. If you look, for instance, at ER 24, paragraphs 52 to 53 of Sovereign's complaint, I don't think it is correct to say that they are not attacking the idea that there were purported legal misrepresentations in that letter. Sovereign's argument right there is that the policies couldn't have possibly been on this basis. And, again, I think, and they're saying as a matter of law, that wouldn't have been an adequate coverage policy. But, again, I don't think that can be credited at this stage because I think the district court is correct in taking judicial notice under Federal Rule of Evidence 201 that Sovereign's own documents undisputedly indicated that Sovereign had paid for 303 patients to be referred to it at a cost of $5,000 to $7,500 per patient. And that under California Insurance Code 750, that is emphatically unlawful. So I don't think it's plausible to say that there's no investigation of this stuff. I mean, their own complaint is going through all of the reasons why Sovereign actually was investigated by defendants. And the wealth of evidence that was produced, including by Sovereign itself, that would seem to substantiate that this is not just sort of a sham audit as they're trying to allege. Really quickly, for what purposes do you want us to consider the jury verdict you submitted as part of your Rule 28J filing? It's an unusual 28J. That's not really, I think, the appellant makes a decent point of objection there. But why are you asking us to consider that? I think it is relevant in the sense that it is an update on a case that we have mentioned in the supplemental appendix. And I think it's relevant on that score. And look, the court does not have to, I think our position, first and foremost, is we absolutely should prevail regardless of whether you look at the 28J. It is for the court's consideration, and it does sort of, again, tend to undermine what they have been representing with respect to their complaint. But I think the most key point is what we've put in our supplemental appendix and what the district court properly took judicial notice of, which is that Sovereign's own documents said that they were paying for patients. So they can't, at this point, deny it. You can't have it both ways with respect to allegations, even at the sort of 12B6 stage. And then with respect to the representations to law enforcement and why those are not actionable, again, first of all, Sovereign doesn't appear to be disputing at this point that under California insurance code provisions, you have to report suspected insurance fraud, which is what we did. And if you have a legal requirement to report something, it can't be unlawful. Ms. Harris, did your clients ever inform at the time that this investigation was going on, did they ever inform the FBI that you were already in litigation with Sovereign? So I'm not sure, but the allegations in the complaint, which is what we have before us, are a little bit contradictory on this front because, on the one hand, Sovereign is saying, no, we didn't say that there was this investigation ongoing. And then on the other hand, they're claiming that the warrant, the search that was authorized Well, you can say they're contradictory, but you can answer the question, did your clients ever inform law enforcement that there was a pending civil matter? And the answer is I don't know. But I do think at the 12B6 stage But you don't know? I don't know. We're happy to submit a letter to the court on this, but I honestly don't know. And what I can tell you is I think it is extremely important that their own complaint, which is what you're looking at for 12B6 purposes, is contradictory on this point because I think that tends to undermine, again, the credibility of what they're trying to say, which is that, I mean, I don't even think it would make it a RICO predicate regardless as a matter of law. Well, it certainly might skew the view of how the federal agents react then to the information that they're being provided by your client. If they knew that simultaneously there was an ongoing civil matter. Well, I think the problem there is a couple of things. One is that Sovereign's own complaint is saying that they actually did know because they are purportedly looking at the discovery request in this civil matter and state court to shape what they asked for in the Warren search. That is literally in their complaint. So I think that to the extent that were an allegation, the complaint itself belies that contention. But beyond that, the question with respect to whether the misrepresentations to law enforcement would be actionable is whether there is sort of a sham representation to say that Sovereign is using third parties to procure patients. And again, I think the district court got that exactly right by saying Sovereign can't deny that that was conduct that they were engaged in in this particular complaint given that their own documents in state court expressly say that. And that is what was taken judicial notice of, and that is absolutely proper under Rule 201. All right. Your time has expired. In fact, you've gone over. Unless the court has any other questions, I'm going to move on to Ms. Kuwahara. There don't appear to be other questions, so your time's expired. Ms. Kuwahara. Thank you, Your Honor. Emily Kuwahara for Optum Services, Inc. There are a couple of points that I'd like to make on behalf of Optum that I don't want to have lost in this larger discussion. We join all of Ms. Harris's arguments on behalf of her client. I'm here today to talk about a couple of points for Optum. The first is that Sovereign simply hasn't alleged any predicate acts that Optum has committed in the complaint. I know Your Honor has mentioned some other defendants, but I would submit that the same is true for Optum, where there are no predicate acts alleged. And my posting counsel has said that at this stage, the complaint has to be liberally construed, but that does not mean that the fraud allegations do not have to be made. Specificity is required. There's no who said what to whom and when. Everything is left to be quite vague. In its reply brief and its argument today, Sovereign has not responded to that argument that we have raised. Instead, Sovereign asked the court to punt and send it back to the district court, and this court can affirm for any reason supported by the record. Our opposing counsel has raised the standard of review on DeNova. The court can affirm for any reason supported by the record. And Sovereign already argues that the Third Amendment complaint is sufficiently pled, and they don't identify any amendments or facts that could add or cure this deficiency. Well, Ms. Kohara, I think the Third Amendment complaint alleges that Optum made misrepresentations to both law enforcement and other insurance agencies. It also alleges that they engaged with the investigation that was part of these misrepresentations that spanned from January 2016 to February 2017. And isn't that sufficient at the pleading stage? Well, Your Honor, with respect to representations to law enforcement, the complaint actually does not provide any statements that Optum has made to law enforcement. Optum was not present at that meeting. And when you look closely at the allegations, which are mostly in paragraph 75, the allegations are that are very vague as to exactly what of the interviews that Optum was doing. All right, but how can they be more specific when they haven't been able to do discovery yet? Well, Your Honor, whether or not they've been able to do discovery, they must provide who said what to whom. And going back to just the interview process, Your Honor, it's not clear who Optum interviewed and that there was any fraud in the interview process itself. And so, therefore, even though the warrant is sealed, they still have to provide enough of who said what to whom, and that is lacking all the way from the beginning of the process. Let me ask you one other thing. Hypothetically, and this is just hypothetically, if we were to reverse this to Health Net, is there a reason to still affirm as to Optum? Is there a reason to treat you differently? Yes, Your Honor, I believe so. For under RICO, each defendant needs to have engaged in a pattern of racketeering, and a pattern of racketeering is true predicate acts. And I know the other side does say in its brief that we don't argue that, but we do argue that there are no predicate acts. If there are no predicate acts, Your Honor, there's no pattern of racketeering activity, and, therefore, Optum is an improper defendant for this action. So how is Optum different than Health Net, though? Well, Optum is a different entity than Health Net. No, but, I mean, are there predicate acts as to Health Net but none as to Optum, or what are you arguing here? Why would you be treated differently than Health Net? Why aren't you in the same bucket? Well, Your Honor, we are not saying at all that there are predicate acts as to Health Net. I just want to be very clear on that. We don't believe there are predicate acts. But with respect to Optum specifically, there's no allegation of mail or wire fraud that Optum committed to be part of this RICO enterprise, and that is required for a RICO claim to stand against Optum, Your Honor. And so, therefore, we believe that Optum does get to get out of this suit if it has not committed any acts, and it has not been alleged to commit any acts of mail or wire fraud here. All right. Are there any additional questions? All right. You have 17 seconds to wrap up. Well, Your Honor, for all the reasons that Ms. Harris has raised in her briefs, I respectfully request that this court affirm the judgment, Your Honor, and my time is up. Okay. Thank you. Mr. Sessions, you have one minute. Thank you, Your Honor. I'll be very brief, and I think I'll spend my minute returning to the proximate cause issue since that's really the central issue here. First, I'd like to reaffirm that this is a factual issue. It shouldn't be decided on a motion to dismiss. Two, defendants say they had an obligation to come forward if they suspected fraud. There's no obligation to go to the FBI or the U.S. Attorney's Office. This is a highly unusual step. And three, you know, if you look at the allegations of the complaint, I think the court will see that Sovereign had good reason to think that the FBI, law enforcement, wasn't exercising independent judgment because we've made thorough allegations about defendants' multiple connections with law enforcement. They made this presentation to law enforcement. They had personal connections with the office. The language in the warrant appeared to have been taken from defendants. And finally, and most egregiously, Health Net's counsel admitted that his firm was hired to secure an indictment against Sovereign. So this is not a case where the insurance company is simply doing its duty and letting the chips fall where it may. This was a concerted effort to damage Sovereign, and we can see that from the allegations in the complaint. All right. Thank you both for your argument. This matter will stand submitted.
judges: CALLAHAN, THOMAS, Humetewa